IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FOREST GUARDIANS and
CARSON FOREST WATCH,

      Plaintiffs,

vs.                                                                                                                                         No. CIV 05-0372 JB/DJS

UNITED STATES FOREST SERVICE,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Plaintiffs' Motion for the Court's Consideration of Extra-Record Evidence in Resolution of the Merits, filed February 13, 2006 (Doc. 45). The primary issue is whether the Court should consider extra-record evidence in resolving the merits of this case. Because the Plaintiffs' request to supplement the record with the United States Forest Service's Petition for Rehearing in <u>UEC II</u>, is unopposed, the Court will grant that request. Also, because the Plaintiffs' other proposed documents fit within an exception to the administrative record review rule, the Court will supplement the record with these documents for the Plaintiffs' asserted limited purpose that the documents shed light on the reliability and sufficiency of Breeding Bird Survey ("BBS") data as used by the United States Forest Service ("USFS") to satisfy its Management Indicator Species ("MIS") monitoring obligations.

**DOCUMENTS**

The Plaintiffs move the Court to make the following documents part of the record:

1.      DRAFT: Forest Level MIS Population Assessment for the Dutton Timber Sale and Prescribed Burn Project," USFS San Juan National Forest – Pagosa Ranger District (2002)("Exhibit 1").

Plaintiffs' Motion for the Court's Consideration of Extra-Record Evidence in Resolution on the Merits ("Motion on Extra-Record Evidence") at 2. This USFS document discusses that Breeding Bird Surveys are not intended to provide population trend data on a "local" level: "Breeding Bird Surveys (BBS) were designed to provide a continent-wide perspective of population change . . . . Local trends are sometimes difficult to interpret and can be quite different from larger-scale BBS trends." Exhibit 1 at 64 (attached as Exhibit 1 to Motion on Extra-Record Evidence). The document goes on to acknowledge "the limitations of BBS data to accurately track hairy Woodpecker population trends at anything other than at gross geographic scales and over long time intervals . . . ." Id.

    2.    "U.S. Fish and Wildlife Service Breeding Bird Surveys: How Can They Be Used in Forest Management," Laundenslayer, William F. – USFS Pacific Southwest Forest and Range Experiment Station (1998)("Exhibit 2").

Motion on Extra-Record Evidence at 2. This report, by a USFS biologist, notes that BBS data is of limited utility as a tool for providing population trend data at a local level:

> As a tool for monitoring, BBS may have some use, although trends suggested from a single route may be inaccurate.
>
> * * * *
>
> In conclusion, BBSs are useful for inventorying birds present in an area. However, if used for developing baselines or as monitoring tools, they must be used with caution, especially for monitoring at a local level. Perhaps, as Robbins et al. (1986) suggest, BBS should be used only for monitoring at relatively broad scales, where problems due to observer variability, weather, small chances of encounter, and other confounding factors are minimized.

Exhibit 2 at 119 (attached as Exhibit 2 to Motion on Extra-Record Evidence).

    3.    Combining Information from Monitoring Programs: Complications Associated with Indices and Geographic Scale," Sauer, John R. – USGS Patuxent Wildlife Research

>    Center (undated).

Motion on Extra-Record Evidence at 3. This document contains a lengthy discussion of the appropriate use of BBS data, and provides a caution concerning the use of BBS data to inform management decisions: "The landscape-level nature of BBS data means that using the information for management at local scales is difficult . . . . [T]he BBS forms a regional context for evaluation of bird population trends in local areas and specialized habitats, but should not necessarily be considered a valid predictor of local trends." Exhibit 3 at 3 (attached as Exhibit 3 to Motion on Extra-Record Evidence). The paper concludes as follows:

> The BBS provides a large-scale view of bird populations and monitors many species of birds with sufficient precision to provide some confidence in the results (Peterjohn et al. 1995). However, attempts to use BBS information to provide insights into local management actions is likely to lead to imprecise and inaccurate results . . . . Because managers cannot rely on the landscape-level results of the BBS to provide them with reliable information on local consequences of management actions, they must design surveys at the appropriate scale to monitor change.

Id. at 5.

>   4.   USFS Motion for Panel Rehearing in UEC II.

The Plaintiffs point to the following to support their contention that the USFS, in its Motion for Panel Rehearing in UEC II, "acknowledges that the decision does require project level MIS population monitoring":

> Moreover, to the extent the Court's holding can be read to suggest that the Forest Service is required under Section 219.19 to collect project-specific MIS population trend data, it would impose a requirement that is scientifically unsound. . . .
>
> Accordingly, UEC I should not be construed to require that all provisions of section 219.19 be mechanically applied to project-level activities . . . .
>
> Accordingly, the Court should revise its decision to affirm the district court's holding that the Forest Service complied with its MIS monitoring responsibilities under the

Forest Plan and section 219.19 of the 1982 regulations.

Petition for Panel Rehearing at 12-14 (attached as Exhibit 4 to Motion on Extra-Record Evidence).

## PROCEDURAL BACKGROUND

Pursuant to the Court's Memorandum Opinion and Order of December 13, 2005, granting the Plaintiffs' request, see Doc. 37, the Plaintiffs' opening brief on the merits consists of their memorandum in support of preliminary injunction, see Doc. 13, and reply in support of preliminary injunction, see Doc. 29. The USFS asserts that the Plaintiffs made no argument in their opening brief on the merits that it was inappropriate for the USFS to use BBS data in determining population trends. See Federal Defendants' Response to Plaintiffs' February 13, 2006 Motion to Consider Extra-Record Evidence [Doc. No. 45] ("Response") at 3, filed March 2, 2006 (Doc. 49). The USFS contends that the Plaintiffs did not raise this issue until their February 6, 2006 reply brief on the merits. See id. at 3.

During the February 10, 2005 hearing on the merits in this case, the Plaintiffs' counsel cited to various government publications in support of the Plaintiffs' contention that the USFS cannot rely on BBS data to satisfy its MIS population monitoring obligations under 36 C.F.R. §219.19, regardless whether those obligations exist at the forest level or the project level. See Transcript of Hearing at 31:4-33:17, 133:5-7 (taken February 10, 2006).[1] The Plaintiffs' counsel also cited to the USFS' Petition for Panel Rehearing in Utah Environmental Congress ("Pre-Amendment UEC II"), 421 F.3d 1105 (10th Cir. 2005), to show that the USFS has already conceded that the United States Court of Appeals for the Tenth Circuit's decision in UEC II requires MIS population monitoring at

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

the project level. See Transcript of Hearing at 13:21-15. As the USFS stated at the February 10, 2006 hearing, it does not object to the Court's consideration of this fourth document. See id. at 133:21-134:1.

With this motion, the Plaintiffs seek to have the Court formally admit these various documents into the administrative record. See Motion on Extra-Record Evidence at 1-2.

## LAW REGARDING ADMINISTRATIVE APPEALS

Pursuant to Olenhouse v. Commodity Credit Corp., "[r]eviews of agency action in the district courts [under the Administrative Appeals Act ('APA')] must be processed as appeals. In such circumstances the district court should govern itself by referring to the Federal Rules of Appellate Procedure." 42 F.3d 1560, 1580 (10th Cir. 1994).

The Tenth Circuit has repeatedly held that waiting to raise an issue until a reply brief -- and waiting until oral argument to produce evidence allegedly supporting an argument on that issue -- is not allowed. See, e.g., Silverton Snowmobile Club v. U.S. Forest Service, 433 F.3d 772, 783 (10th Cir. 2006)(holding that "appellate courts will not entertain issues raised for the first time on appeal in an appellant's reply brief"); United States v. Almaraz, 306 F.3d 1031, 1040-41 (10th Cir. 2002)(holding arguments presented for the first time during oral argument are waived); Gaines-Tabb v. ICI Explosives, USA, Inc., 160 F.3d 613, 624 (10th Cir. 1998)(holding that arguments not raised in opening brief are waived); Coleman v. BG Maintenance Mgmt. of Colorado, 108 F.3d 1199, 1205 (10th Cir. 1997)(rejecting argument because "issues not raised in the opening brief are deemed abandoned or waived").

## JUDICIAL NOTICE

The Tenth Circuit holds that a reviewing court may take judicial notice of certain government

documents, even in an administrative record review case such as this one. See <u>Pueblo of Sandia v. United States</u>, 50 F.3d 856, 861 n.6 (10th Cir. 1995). The Tenth Circuit has held that it is proper for a district court to take judicial notice of an official governmental publication. See <u>Clappier v. Flynn</u>, 605 F.2d 519, 535 (10th Cir. 1979).

## **ADMINISTRATIVE RECORD SUPPLEMENTATION**

The Supreme Court of the United States has expressed the general view that courts reviewing an agency decision are limited to the administrative record. See <u>Fla. Power & Light Co. v. Lorion</u>, 470 U.S. 729, 743-44 (1985). "[J]udicial review of an agency decision typically focuses on the administrative record in existence at the time of the decision and does not encompass any part of the record that is made initially in the reviewing court." <u>Lands Council v. Powell</u>, 379 F.3d 738, 747 (9th Cir. 2004)(citing <u>Southwest Ctr. for Biological Diversity v. United States Forest Serv.</u>, 100 F.3d 1443, 1450 (9th Cir. 1996)). Courts have recognized exceptions to the administrative record review rule. The Ninth Circuit has summarized these exceptions:

> In limited circumstances, district courts are permitted to admit extra-record evidence: (1) if admission is necessary to determine "whether the agency has considered all relevant factors and has explained its decision," (2) if "the agency has relied on documents not in the record," (3) "when supplementing the record is necessary to explain technical terms or complex subject matter," or (4) "when plaintiffs make a showing of agency bad faith." <u>Southwest Ctr.</u>, 100 F.3d at 1450 (internal citation and quotation marks omitted).

<u>Lands Council v. Powell</u>, 379 F.3d at 747. A "court's decision to supplement the record is reviewed for an abuse of discretion." <u>Midwater Trawlers Coop. v. DOC</u>, 393 F.3d 994, 1002 (9th Cir. 2004)(citing <u>Fishing Co. of Alaska, Inc. v. United States</u>, 333 F.3d 1045, 1046 (9th Cir. 2003)).

## **ANALYSIS**

The Plaintiffs seek to have the Court consider several documents that are not part of the

-6-

Administrative Record for the USFS' actions at issue. Because the Court believes that the Plaintiffs sufficiently raised this issue in their opening brief, and because the Court believes that the documents fit within the narrow exception to explain technical terms or complex subject matter, the Court will supplement the record with these documents.

**I.    THE COURT WILL CONSIDER THE EXCERPTS FROM THE USFS' PETITION FOR PANEL REHEARING IN UEC II.**

The Plaintiffs seek to introduce four exhibits, one of which contains excerpts from the USFS' petition for panel rehearing in Pre-Amended UEC II before the Tenth Circuit. The USFS does not oppose the Court's consideration of this document, but argues that the petition does not support the Plaintiffs' contention that the United States conceded that the pre-amended UEC II decision held that the USFS was required to collect population data at the project level. The USFS argues that, on the contrary, it contended that "some parties might attempt to use some ambiguous language in the panel's opinion in an overreaching manner to argue that district courts are bound by that decision to enforce the agency's MIS regulations in an absurd manner to require population data for particular projects -- just as the Plaintiffs have done here." Response at 2 n.1. The USFS contends that the Tenth Circuit's amendment of its decision in UEC II granted the United States' petition in this regard, and clarified that the relevant "area" for assessing MIS population trends and viability is the area covered by the Forest Plan, not by individual projects. See id. (citing UEC II ("Amended UEC II"), 439 F.3d 1184, 2006 WL 446040, at *4 (10th Cir. 2006)).

The Plaintiffs contend that the USFS is wrong when it argues that the Tenth Circuit's decision in Amended UEC II stands for the proposition that the 1982 NFMA regulations do not require MIS population monitoring at the project level. See Plaintiffs' Reply Brief in Support of Motion to

-7-

Consider Extra-Record Evidence ("Reply") at 2-3, filed March 21, 2006 (Doc. 53). The Plaintiffs contend that the section of Amended UEC II to which the USFS points in support of this argument refers to the Tenth Circuit's decision that the selection of MIS occurs only at the forest level, and that the USFS does not have a continuing obligation to select MIS that are present in a specific project area. See id. Because the USFS does not oppose the Court's review of the petition for rehearing, the Court will grant the Plaintiffs' request.

**II   THE PLAINTIFFS' REQUEST FOR THE COURT TO CONSIDER EXTRA-RECORD MATERIALS IS TIMELY.**

The Plaintiffs have submitted documents concerning the BBS for the limited purpose of showing that BBS data is gathered at such a broad scale that it cannot be used to satisfy the USFS' MIS monitoring obligations. See Reply at 3. The extra-judicial materials that the Plaintiffs seek to have the Court consider in this case allegedly show that BBS data cannot be used to determine population trends of MIS with the precision that the NFMA regulations and the Carson National Forest Plan's Monitoring Plan require. See id. at 1. In its response, the USFS argues, several times, that the Plaintiffs should have submitted this information earlier. The USFS argues that the Plaintiffs' attempt to introduce extra-record exhibits at the February 10, 2006 hearing in this matter is akin to an appellant showing up at oral argument before the Tenth Circuit with three new documents that were not part of the record on appeal -- even though the appellant could have presented those documents to the district court below, but did not -- based on an argument that the appellant raises for the first time in a reply brief. See Response at 1-4. The USFS contends that the Plaintiffs were obligated to present these materials to the USFS during the administrative process for the Agua Caballos Projects, so that the agency could have reviewed and addressed the Plaintiffs' concerns

before reaching a decision approving the Projects. See id. at 4.

The Plaintiffs represent that, during the 14 year-long planning and decision-making processes for the Agua Caballos timber sale project, the USFS did not contend that BBS data satisfies the USFS' MIS population monitoring duties at the site-specific level, and that the USFS developed this argument for the first time during the litigation of this case. See id. at 1. The Plaintiffs contend that, if the USFS had ever stated during the planning and decision-making processes for the timber sale project at issue that BBS data can be used to determine project-level population trends of MIS, then the Plaintiffs would have been put on notice as to this contention and would have submitted information explaining why this contention was not true. See id. at 1-2. The Plaintiffs further contend that, having failed to make this argument during the administrative process, the USFS cannot reasonably complain that the Plaintiffs should have provided this information during the administrative process. See id. at 2.

The Court concludes that the Plaintiffs sufficiently raised the issue in their opening brief, although they developed the issue more fully in their Reply Brief on the Merits and at oral argument. As the Court noted earlier, the Plaintiffs stated the following in their opening brief:

> The USFS states that it has conducted breeding bird surveys on the Carson National Forest, but that this survey methodology "does not give the individual results for wild turkeys" and "will not provide population trend for the Merriam's turkey." AR 011969. Additionally, the planning record for the A/C project indicates that no population surveys whatsoever have been conducted in the A/C project area, or in the Ranger District where the A/C project is located.

Plaintiffs' Motion for Preliminary Injunction and Memorandum Brief in Support of Motion for Preliminary Injunction at 23, filed September 1, 2005 (Doc. 13). Thus, the Plaintiffs sufficiently raised the issue of BBS data as it relates to population trend data in their opening brief.

The Court also does not believe that the Plaintiffs' failure to bring these documents to the agency's attention requires the Court to disregard the documents now. First, as the Court explains below, the documents fit within the "technical terms or complex subject matter" exception to the administrative record review rule. Because it is an exception to the rule, it need not have appeared in the record below. Second, the Plaintiffs did raise the general issue concerning the USFS' 1982 regulatory MIS monitoring deficiencies before the agency, see AR 012852-AR 012853 (discussing the MIS monitoring shortcomings), and specifically refuted the sufficiency of the BBS data for the Hairy Woodpecker and the Merriam's Turkey, see AR 012855-012856. The Court will therefore not exclude the documents from the record as being untimely.

## III. THE DOCUMENTS FALL WITHIN AN EXCEPTION TO THE RECORD REVIEW RULE.

The Court will supplement the record, pursuant to the "technical terms or complex subject matter" exception to the administrative record review rule, with the Plaintiffs' proposed documents concerning BBS data for the Plaintiffs' asserted limited purpose, and to the extent that they relate to the sufficiency and reliability of BBS data in fulfilling the USFS' MIS monitoring obligations.[2] In this case, the Plaintiffs have submitted the BBS data -- the first three documents -- for the limited purpose of assisting the Court to understand the limitations of BBS data. The Court does not have prior

---

[2] The Plaintiffs argue, in the alternative, that the Court may take judicial notice of the documents. See Motion on Extra-Record Evidence at 4; Reply at 2-3. Because the Court will supplement the record with the documents under the "technical terms or complex subject matter" exception, it need not and will not address whether it could take judicial notice of the documents. The Court notes, however, that it has concerns that, although the Plaintiffs may be correct that the documents are government documents or government publications, the Plaintiffs have not refuted the USFS' argument that the facts contained in these documents are not "indisputable," are not generally known in the district, and are not "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Response at 4-5 (citing Fed. R. Evid. 201).

experience with BBS data. The USFS relies on BBS data in arguing that it has complied with its Section 219.19 obligations in this case. See Federal Defendants' Response Brief on the Merits at 29-32, filed January 27, 2006 (Doc. 39). Because the USFS relies in part on BBS data -- technical and complex -- to show that it fulfilled its MIS monitoring requirements, and because the Court has no prior experience with the reliability and sufficiency of BBS data, the Court will allow the Plaintiffs to supplement the record with these documents under the exception to the general rule. See NRDC v. Norton, No. 1:05-CV-01207, 2006 U.S. Dist. LEXIS 32827, at *45-46 (E.D.Cal. May 13, 2006)(granting plaintiffs' request to permit reference to documents for the limited purpose of aiding the court's understanding of technical concepts where documents would assist the court's understanding of the "exceedingly complex technical and scientific issues placed in dispute by the parties' respective claims").

**IT IS ORDERED** that the Plaintiffs' Motion to Consider Extra-Record Evidence is granted. The Court will supplement the record with the USFS' Petition for Rehearing in UEC II. The Court will supplement the record, pursuant to the "technical terms or complex subject matter" exception to the administrative record review rule, with Plaintiffs' three remaining proposed documents for the Plaintiffs' asserted limited purpose, and to the extent that they shed light on the reliability and sufficiency of BBS data as used by the USFS to satisfy its MIS monitoring obligations.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Steven Sugarman
Belin & Sugarman
Santa Fe, New Mexico

    *Attorney for the Plaintiffs*

Sue Ellen Wooldridge
  Assistant Attorney General
United States Department of Justice
  Environmental and Natural Resources Division
Washington, D.C.

Kathryn Toffenetti
Mary Ann Joca
  Office of the General Counsel
United States Department of Agriculture

-- and --

Andrew A. Smith
  Trial Attorney
United States Department of Justice
Environmental and Natural Resources Division
Albuquerque, New Mexico

    *Attorneys for the Defendant*